The third member of the panel will be Justice Lampkin. She's unavailable today because of a personal matter that has kept her from being present, but she will have available the recordings. I'm going to go ahead and ask individuals to introduce themselves when they step up. Each side has 15 minutes. We can begin with the appellant. Thank you, if it pleases the court. My name is David Grund. I'm here along with Melissa Grund, who is co-counsel in this case. And I'd like to start off with certain inalienable truths. One is that the Divorce Act, and I'm going to call it the Divorce Act even though it has a more formal name, the Illinois Marriage and the Solution of Marriage Act, but for purposes of simplicity I'm just going to call it the Divorce Act. The Divorce Act is a creature of statute. And therefore, its power is controlled by the General Assembly. It has no other powers other than that which is granted by the General Assembly. Let me interrupt you right there and ask you this simple question. Are there other similar statutes that are not tied to the common law and therefore limited to whatever the legislature decided to put into those statutes? I'm sorry. My point is that the divorce statute doesn't stand alone in the description that you've just given. Would that be accurate to say? No, it would not, Your Honor. I make an exception with that. I'm suggesting to you that there is no, unless I misconstrued the question. Does the Divorce Act have similar application to other actions at law? Yes. I'm saying that the Divorce Act doesn't stand alone in terms of the description you're giving as if we can only look at the Divorce Act because there are other acts that are similarly created by the legislature without any connection to the common law. And therefore, whatever you're saying about the Divorce Act would necessarily seem to apply to these other acts. And then you're really just creating this whole new division between those remedies that are tied to the common law and those remedies that are simply statutory. The common law was abolished. And because the... The common law continues to exist in terms of the connection that predates the statutes that were passed. But the common law does not affect the substantive nature of the actions that are contained in the Divorce Act because it is a creature of... Let me just say this. It isn't as if I want to bring up the common law. I thought your point was that this is a strictly statutory relief or remedy or basis to seek some sort of court involvement and therefore we can only look to what the statute provides. Well, I think the cases are very clear. And I think such as Burkhart, for example, and other cases. I think the cases are very clear that the divorce court cannot act above that power which is given to it by the legislature. Well, then let me ask you this question. Do divorce judges have discretion, have the authority to do what a law division judge has? It depends on what application they are making to what specific area of the law. Now let's get to the application. What application are we dealing with here that you believe is confined solely to the divorce? That's the point of this entire argument. There is no application of the forum nonconvenience that's permitted or that authorizes the court to act upon it such as forum nonconvenience. Would you take the position, Mr. Grund, that all the cases that have been decided by the courts of the state of Illinois in domestic relations matters where cases have been transferred from here to there are all wrong? I read a case this morning that was written by the man who was sitting here a couple minutes ago, Justice Gordon, in the Mather case in which he said the forum nonconvenience ruling by the judge was correct and this case is going somewhere else. Is that just wrong? That shouldn't happen? Well, let me say it this way. First of all, the issue has never been decided by a court. Nobody has ever challenged the constitutionality of hunting a case anywhere outside of the state of Illinois on the basis or much less to another country. Before we slide into the constitutionality, let's talk about the statutory scheme. What I'm asking you is there's case law in the state of Illinois that have upheld forum nonconvenience transfers in domestic relations cases. Are you telling me that those cases are just nobody brought this argument up and so they're all wrong? That's exactly right. Nobody has ever challenged the power of the court to transfer a case on the basis of venue outside of the state of Illinois. On the basis of forum nonconvenience. Yes. So then I guess therefore you would agree that there is no case in the state of Illinois that supports your position. This is a case of first impression. Okay. Thank you. Go ahead. I think if I may just briefly cite the language in In Re Marriage of Burkhart, which we cited in the brief. It says, the marriage act is to be strictly construed. Marriage dissolution is statutory. A court must act within the statutory authority granted to it in a dissolution of marriage action. It may not rely upon its general equity powers. In the exercise of special statutory jurisdiction, if the mode of procedure prescribed by the statute is not strictly pursued, no jurisdiction is conferred on the circuit court. So now we have this rule called 137. I'm sorry. 187. 187. Which is, in effect, a procedural. It doesn't confer any rights. It simply says you must file an action for forum nonconvenience at a certain point in time. And thereafter, if the case is dismissed on the basis of forum nonconvenience, then these are the remedies that are afforded. So there is no specific authority. In fact, Judge, and that's when we went into the legal maxim for statutory construction. Let me stop you right there, Mr. Brewer, because I have difficulty with this. When a statute is going to be strictly construed, I think in terms of what the statute provides, and therefore nothing beyond what it provides can be sought after or requested. But when the statute is silent, it is not a matter of strict construction to say that that which is not provided in the statute cannot, from procedural rules that seem to apply across the board, has no application. I think the law in this area is quite clear. That which is included excludes all other matters. That's the strict definition of the Latin maxim. Is there a provision in the Divorce Act that says all divorces initiated in the courts of Illinois must be resolved now? Yes. Really? Yes. Quote it to me. I'm talking the Act. I'm not talking the case law. I'm talking about the Constitution. All right. Keep the Constitution. I'm talking about... You're talking about your remedy argument, your lack of remedy argument? Yes. Before we get to that, I'm sorry if I'm going to just hold you back for a minute and ask you to stay with the statutory scheme for just a second. We'll have enough time to talk about remedy. My understanding of your argument is that Section 105 of the Dissolution Act incorporates the civil practice law. Correct. And the civil practice law is designated to be Article 2 of the Code of Civil Procedure. Correct. And since the forum nonconvenience provision is a Supreme Court rule, and the Supreme Court rules are only mentioned in Article 1, the general provision section, therefore the right of the Supreme Court to make rules with regard to this is not included, therefore. Is that your argument? Because the general provisions section, which is Article 1 of the Code of Civil Procedure, speak about the Supreme Court's right to make rules, which includes 187, to effectuate the Code of Civil Procedure. Correct. I'm just saying, tell me if I'm wrong, my understanding of your argument is that since the legislature in the Dissolution Act used the phrase as opposed to Code of Civil Procedure, that they only incorporated what is referred to as Article 2, the civil practice law, which is designated as 5-2. Correct. With the exception of one thing. The Divorce Act says, and I'm going to quote the Act, Application of civil practice law. The provisions of the civil practice law shall apply to all proceedings under this Act. Meaning the Divorce Act. That means that unless there's a provision in the Divorce Act, the civil practice act does not apply to it. That's the clear meaning of this Section 105, and therefore Section 105 is critical. I'm not sure if you didn't just flip that around. What 105 says is that proceedings under the Dissolution Act are governed by the civil practice law. Right? Yes. Okay. Right? There's an exception. Except is otherwise provided in the Act. No. Shall apply to all proceedings under this Act. So in other words, one can, the plain meaning is, if they don't apply to the Divorce Act, then the civil practice act does not apply. Because there's different procedural requirements that the legislature mandates to the divorce court in terms of jurisdictional, for example, the Uniform Child Custody Jurisdiction Act. There are completely different jurisdictional requirements than those contained in the civil practice. I think you and I are chasing each other around. Maybe I'm just not understanding. Okay. The 105, it's just one line. The civil practice law shall apply to all proceedings under this Act. Under this Act. Yeah. The Divorce Act, right? Correct. Okay. The civil practice law applies to the Divorce Act. This is the divorce provision. This is the power granted to the divorce court by the legislature to say that you've got to follow the civil practice act. Yeah. Except in those instances, but only in those instances where there is a proceeding that's authorized under the Act. Okay, so a divorce. Right. So you have a divorce. That's a proceeding under the Act. No, it's not. It's not? No. What is it? Divorce is a proceeding under the Act. Okay, so you have, I hope I don't say it wrong, but Ricard versus Sahut. It's a proceeding under the Act. No, the proceeding under the Act is the transfer of this case to France. That's the proceeding that's taking place. It's a foreign nonconvenience issue that's being decided by the court, not the divorce itself. Because if there were no such thing as the... When they filed their foreign nonconvenience motion, they put a case number on it, right? And that case number was the case number for this case. This case is a proceeding under the Act. Yes, sir. Okay? And this proceeding, this divorce case, is governed by the civil practice law. To the extent that the proceeding is under the divorce act. That's something that we just cannot close our eyes to. So basically what you're saying is that proceedings refers to... Motions. Motions, relief, requested, and it's not the overall aim of the divorce. It is whatever falls within it, and therefore, if whatever falls within it, such as this motion for nonconvenience, then it isn't authorized. Again, by statutory construction, if the legislature managed to actually... I agree with you. Let's say I agree with you on that part. Let me ask you this question, though. What's the point? Why would the legislature do what you are arguing for? Precisely for the reason that that particular doctrine violates a litigant's civil rights, a guarantee to a remedy, and due process of law. That's why it wasn't... I think you might be giving too much credit to our legislatures to think that they had that in mind when they passed this portion of the divorce act. I suspect, Your Honor, that our legislature consists of a number of very, very competent lawyers. If that provision were ever brought up for consideration for adoption... So then let's go with the next question. The next question is why divorces and not anything else? Or are there other remedies that you believe are restricted in kind as you contend divorce actions are? Well, one of the things that I believe is unconstitutional, Judge, is the fact that a same-sex individual cannot marry in the state of Illinois. But there's a difference between something being unconstitutional by virtue of the rights inherent in human beings and something being unconstitutional because a statute says something that isn't consistent with the Constitution. Right. I think what Justice Garcia is asking is why would, in a commercial litigation, a lawsuit between a guy who bought a truck and a guy who sold him a truck, why in that proceeding can you go into court and say, you know what, it would be more convenient for us to do this in Cairo, Illinois, as opposed to Chicago, Illinois. But in a divorce case, you can't go in and say it would be more convenient to go to Cairo. You have to be where the plaintiff wants it no matter what. That's basically what you're saying. For two reasons. One and foremost, private liberty interests are not involved. Money is involved. The form of convenience really is a commercial creation. Matters of divorce was left to the church, to the chancellor in the old days under the common law. So to suggest that form of convenience really is a legal principle, it is not. That's why they call it a doctrine. Because it governs the venue. It just governs the situs of the action itself. The next reason, I suggest, is because we have two different courts. All of the courts that have transferred cases outside of the jurisdiction of Illinois are all commercial cases, all cases that are brought in the law division. None of them. None of them. And the constitutionality of those has been challenged as well to the extent. But here we've got a very, very narrow construction of the power of this court. And it simply says, look, you cannot act beyond that power which we as the general assembly... In the Clark case, they sent the case to Massachusetts. Right. Is that the Clark case? I believe so. That was wrong too? You can't send a case to another state? It was the right decision for the wrong reason. Because what happened in that case, everybody moved to Massachusetts. The court lost subject matter jurisdiction. And it should have been transferred or dismissed based upon lack of subject matter jurisdiction. Nobody challenged the court's ability to transfer this case to another state. And I think what's very clear is the fact that we have only two provisions governing venue in the divorce act. One is the provision that says where you can file the case. And the other one is where the case can be heard after the decree is entered, after the judgment is entered. So again, the statutory construction. Why include those? And if you do include those under statutory construction, it's to the exclusion of everything else. Those are the only venue statutes. And those venue statutes only speak to the state of Illinois and transfers in counties of the state of Illinois. It doesn't say dismiss. And here, this case was dismissed based upon a doctrine that has absolutely no application to the divorce act and in contravention of constitutional rights. I want to say one thing, and I'm going to conclude. You know, Melissa, who happens to be my daughter and also tried this case with me, when we first approached this thing, she said to me, well, what's wrong with this picture? How can a court just take this situation and this particular litigant, who's been here for as long as he has, and just send it, send this 10-month effective marriage to France? What about his rights? How does it do it? And so I said, you're right. What's wrong with this picture? And I think the answer is very clear. And that's why we, my point, is relying on this court to embrace his rights and over the rights of, over the, over the ability to transfer a case from the United States, from Illinois, from Cook County to someplace in France. But it's not exactly a foreign country. Your client is a citizen of France. He holds a passport to France. He has property in France. He got married in France. And his ex, and prior divorces in France. His divorce case was filed here. I filed it. This divorce case. I'm sorry? His previous divorce was filed here. I filed. It eventually ended up there. It ended up because there was an agreement reached, and they proved it up there, and we domesticated it here, but it didn't end up there. That's the whole, that I thought was the rub, that to the extent that he has rights, I'm not sure that those rights are being trespassed upon or infringed upon by saying, you know what? I think it's better if you litigate this in France, in your home country, where you got married, where your wife is, and where proceeding, where something was initiated before you initiated what you initiated here. He has the right of choice, you'll agree, under the Constitution. It's not unfettered. It is unfettered. He has the choice. He has the right for remedy. He has the right to choose the protection of the Constitution of Illinois and the United States. He has a right to do that. It is unfettered. It's an inalienable right. To divorce? Yes, because it's life, liberty, and pursuit of happiness, and divorce and marriage has been likened in excited cases. And it's not as if he's going to be deprived of that right. He's going to have that right to divorce regardless of where it happens. The question is where is it going to happen? How do we know that? And what if this precedent is sent to Illinois? We know it by virtue of pleading construction. You don't allege that he wouldn't be able to divorce if this case were sent back to France in your pleadings. It's not a matter of divorce. Well, that's how we know. It's not a matter of being able to divorce. It's far beyond that. It's a matter of the court's power, number one, which we have to absolutely respect. You know the inclination is not the limit, the court's power of being who we are. Well, I understand that. But there's also, and I'm sure this court is aware and has practiced it very carefully, there's a distinction made in our Constitution about separation of powers. Are we leaving it to the Illinois Supreme Court to make that decision? Well, separation of powers simply means that the court cannot do the act of the legislature. And I believe that this court is aware of that. Of course. And I also realize, having argued many of these, that these questions don't necessarily suggest the mindset of this court. So please don't take any offense to my disagreements with the court. Not at all. Are there any other questions? Thank you. Good morning, Your Honors. May it please the court. My name is Brian Reed, and I represent the appellee, Danielle Sahut. This morning, the argument that's been presented is an unnecessary attempt to complicate something that is so very simple. This court is well aware of the doctrine of form nonconvenience. Justice Palmer, you referred to other cases this court has decided, this very district. The Illinois Supreme Court has ruled in on this, as well as the United States Supreme Court. This is a doctrine that arises from common law. And I submit to the court that it also arises from common sense. And the U.S. Supreme Court crystallized this common law doctrine in the case of Gulf Oil versus Gilbert. And in that decision, the court said that the principle of form nonconvenience is simply that a court may resist imposition. That's important. The court has the ability to resist imposition upon its jurisdiction when jurisdiction is authorized by the letter of a general venue statute. Now, the Illinois Supreme Court went further to actually describe it in greater detail in a very interesting way. It referred to this doctrine as an equitable doctrine, founded in considerations of fundamental fairness and sensible. Here's the common sense part that I've talked about. And sensible and effective judicial administration, which allows a trial court to decline jurisdiction in the exceptional case where trial in another form with proper jurisdiction and venue would better serve the ends of justice. That's the first American bank case versus Green that we've talked about in our briefs. Now, it's quite clear that the Illinois Supreme Court in Supreme Court Rule 187 has given its blessing to this doctrine. Counsel has told you this morning, also in his brief, that somehow the Supreme Court rules were not incorporated into the IMDMA. If that's the case, I'm not sure how he explains the fact that the Illinois Supreme Court actually drafted interrogatories, model interrogatories under Supreme Court Rule 213 that we all use every day in divorce practice. What about 214, which is the Supreme Court Rule governing request for production of documents? Has the Illinois Supreme Court spoken on conflicts between their rules, our rules, and possibly statutes, and which they are prepared to follow? Well, in fact, the Illinois Code of Civil Procedures says that the Illinois Supreme Court is authorized to implement rules, to adopt rules that are not inconsistent with the Code of Civil Procedure. And 187 is, in fact, not inconsistent. And we use it every day. The reason why counsel, I believe, has spent so much time arguing against 187 is because, quite clearly, if it stands, which I contend it should, he loses for two reasons. Number one, Illinois is an extremely inconvenient form. Number two, Judge Kelly did not abuse his discretion. Now, counsel raises some constitutional arguments. And he relies heavily on a case called Body. And in that case, which is a US Supreme Court case, certain individuals were denied access to file their divorce cases. Now, this was not a form nonconvenience case, and it's important to note that. In the Body case, these people, these individuals, didn't have any money. They had no access to any form whatsoever. And so the court did not appreciate that. You should be able to have access to a form. In this case, Mr. Ricard has access to another form. And, in fact, it's the very essence of form nonconvenience. Form nonconvenience doesn't deprive anybody of a form. It actually merely points to a better form that better serves the ends of justice. And that's what we're talking about. What you are being asked to do today by my opposing counsel is, under the guise of constitutional rights, to grant him some sort of constitutional right, which doesn't exist, to choose between three continents where he owns real estate. He owns real estate in France. He owns it in Brazil. He owns it in the United States. He wants the ability to choose the best law that suits him most favorably and to choose the form that is the most difficult and arduous for his spouse. One where she doesn't speak the language, one where she doesn't know the laws, and one where she's only been here six or eight times when he brought her here and arranged for everything and paid for everything. I submit to this court there is no constitutional right being deprived this individual. He's proven to be a bit of a residential chameleon. He has another form. And that's what Judge Kelly decided. And, interestingly enough, the form that he has is the one that he chose. Because before this case came before the judge in the Daly Center, before it worked its way to you, he filed for divorce against my client, Miss Sahu, in France. And what did he tell the French courts? He swore to them that he lived in France, that he was domiciled in France and gave them his exact address at Aix-en-Provence. What did he tell about my client? That she lives in France, that she's domiciled in France and lives in Lyon. And then he dismissed his case there when things weren't going so well for him and filed the next day here. It's clear. It's very, very clear. He had a form. He chose it. He made representations. And now he wants to... This is not about a divorce case. This is about an annulment, too, because this is just as equally important. He filed for an annulment. My client, per the French courts, receives a support from him. It's an independent action in France. In France, you can actually have a separate proceeding for support, separate from a divorce action. And she receives support from him. Now, if this case were annulled here, of course, obviously, that would be a great coup. He can run back to France and say, oh, this marriage never took place and cut the legs out from under the French court, cut the legs out from under the support order that's in there. Do you see any problems with that? Because I can't believe that the French court would say, our hands are tied. The U.S. courts have decided that an annulment is in order here, and therefore, we have to respect that. Well, actually, I think that the French courts actually have respected the U.S. courts. In fact, the divorce action in France is currently on hold. To the extent that they respect judgments issued from this court, does that trigger an equal respect from our side to those proceedings that have been initiated over there? Absolutely, Your Honor. In fact, notions of comity have been part of our fabric of our laws for as long as we've been a country. We have to respect their laws as they respect ours. And they put their divorce case on hold. And to the extent that there's this constitutional claim, individual constitutional claim, and a national interest to speak in terms of comity, why should the individual constitutional claim that is otherwise only between the lines win out? It doesn't. It just doesn't. In fact, to claim that you have a constitutional right when you have another forum that the court has already held is better suited, it just makes all the sense in the world. That's where it should be. Now, for you to find, as counsel has asked you today, to find that there was an abuse of discretion, you have to hold that no reasonable person...  That's actually the third part of his brief, because the first two parts he's arguing de novo under the Constitution and the fact that he claims that the court exceeded its jurisdiction. He then brings up the issue, which is abuse of discretion, which is the standard this court would have to fall back on. And for you to rule if there's an abuse of discretion, you have to basically hold that no judge, no reasonable judge, could have concluded what Judge Kelly did. And Judge Kelly heard six days of evidentiary issues. He heard testimony. He heard witnesses. He examined the credibility. And Justice Garcia, as you aptly noted just a while ago, he heard the fact, these two people were born and raised in France. They're citizens only of France, educated in France. My client's never lived anyplace else. As I indicated earlier, she's only been here before whenever he arranged everything and she came over. We didn't hear much during the argument about that abuse of discretion scenario, but the appellant told us that, and I'd like you to respond to this, the appellant told us that a motion brought pursuant to Rule 187 is not a proceeding that is recognized by the Dissolution Act. So what do you have to say about that? Under Section 105A. I would say that if he wants to start carving up Supreme Court rules, and if you'll excuse the expression, willy-nilly, and saying, well, these apply because they suit me and these don't apply because they don't, it just renders the entire argument worthless. We all know that under Rule 216 that you have requests to admit. We use those in divorce cases as well. 219, discovery sanctions. 137, attorney sanctions. These Supreme Court rules apply to the extent that they're not inconsistent. And there is nothing inconsistent. One thing I do know is that there are plenty of 137 proceedings in the Domestic Relations Division. That there are. Maybe not participated in by counsel here today, but so I think that that follows from your argument. We certainly know that a motion brought pursuant to Rule 137 can be heard under the Dissolution Act. Absolutely. And as Justice Palmer, as you indicated earlier when counsel was presenting his side of things, there have been other cases on form of nonconvenience where this court has sent other cases to other states, and those weren't all wrong. They weren't. This is a tool that the courts have, that the judges have, to exercise when they feel after they've heard the evidence and weighed the testimony, in this case it was six days of people using interpreters, both sides used interpreters in this case. Judge Kelly made a point of dragging it out, saying that it was dragged out because of that. This case belongs there. And I also want to point out a few more things before I close, factually speaking, that I think this court needs to strongly weigh. And that is the fact that Claude goes to France all the time anyway. In fact, he has no family that lives here, nor does my client, of course. His mother lives in France. His children live in France. He has a grandchild in France. He goes to France every year to visit his mother. He has lots of business interests in France. He owns more property there than he can tell us about, not to mention a house that he recently paid 550,000 euros for with another woman. He formed a business with her and bought this house with another woman, which he has that right to do, but to claim that he's somehow inconvenienced to go to that forum when the French court noted recently, this was part of that, well not recently, but it was in the record as well, that they went out to investigate matters there and found that he was there in the house when they showed up in France, and he was there with this other woman, and he had moved his clothes in. So for him to come to this court, it's disingenuous to say he doesn't have any other forum. He's there all the time. His sole income right now comes from France. He has more apartments than he can tell us about. His accountant is in Paris. He has a business manager in Lyon. And as Judge Kelly noted, he has doctors in Chicago, Paris, and Aix-en-Provence, France. Judge Kelly noted that he splits his time between these places, these three countries. So given the fact that he still does business consulting for their company in France, it's just totally disingenuous to say that he's inconvenienced. My client, on the other hand, 65 years old, who doesn't speak any English, uses a computer program to try to, it's almost like a reverse computer program to try to understand the documents in this case. And I want to wrap up with this last point that's important. For her to prove, for her to defend herself in a case where they file for divorce and where they've asked for an annulment, they've asked for an annulment. They've claimed that she's incapable of consummating the marriage, notwithstanding the fact that they lived together for years prior. For that to happen, she has to be able to defend herself and bring over witnesses from France, doctors or gynecologists. This is what they put in play. This Court knows well the difficulty that is entailed in getting a doctor in Chicago to show up at the Daly Center. Trying to get a doctor from France to come over here and testify with an interpreter is absolutely out of the question. And the expenses would be enormous. Also, the documents are all going to be in French. And their claud owns a number of businesses in France. So how are we going to do discovery on those? And those witnesses, this is part of the First American Bank v. Garim case. The Court noted in that case that an important part of this is the availability of compulsory process to secure attendance of unwilling witnesses, the cost to obtain attendance of willing witnesses, and the ability to view the premises. So there is no way. Well, my client has very, very, very limited means. She had 11,000 euros in the bank at the time of the hearing, a small annuity. She drives a Toyota Corolla. Claud is worth millions, and he's used this court. Judge Kelly concluded by saying in his 12-page written appendant, nothing could be more difficult and inconvenient than for an individual with limited income and assets to defend a lawsuit in a foreign-speaking country over 4,000 miles away. Based on the above facts, the Court finds the state of Illinois is without question an extremely inconvenient forum for Danielle. Given the fact that it was not a close call for Judge Kelly, I think that upon examination of the record, it will not be a close call for this Court either. We ask that Judge Kelly's opinion be affirmed. Thank you so much for your time this morning. Thank you. Do I have any other questions? Thank you, counsel. Mr. Grund, very briefly, and if you wouldn't mind, and of course you can address in the two minutes that you have, you can address the other issues, but why don't you spend just a little time on the abuse of discretion that you believe Judge Kelly engaged in. Sure. Before I do that, Judge, let's talk about the differences between the divorce act and the law division and the application of the form of inconvenience. One of the primary reasons, and this has to do with discretion as well, Judge, one of the primary reasons that Judge Kelly punted this case to France, as counsel suggested, was the costs involved in bringing witnesses here and interpreters, et cetera, et cetera. There's something unique about the divorce act that's not anywhere else, and that's the ability to get one spouse to pay for the economically disadvantaged spouse's attorneys, court costs, cost of litigation, period, the end. You can't get that in the law division. So to consider the cost of litigation in this instance. It's not just the cost of litigation, though, counsel, because there's certainly no international force to compel witnesses that live in France to come to the U.S. I'd like to mention that, too. Think about this, 10-month marriage. The only asset that's in dispute is a property in Brazil that Mr. Ricard bought before the marriage. The only property that is of any material concern with respect to the division of assets is located in Brazil, not in France. You know, I don't believe that Judge Kelly went into the assets or division of assets or concerned them whatsoever in his decision. That goes to the marriage. That goes to whatever the dispute is between the parties. Let the French courts resolve it. One can't decide these issues in a vacuum. We have to know what's at issue before a case is transferred, before a person's choice of forum. I'm sure you're well aware of the Illinois Supreme Court case of Guerin. Is there a – where would the asset division fall under? Is that a public interest or a private interest in deciding whether or not to grant a motion to transfer? I'm sorry. I don't understand. You're suggesting that – Well, I think this comes up – if I may. I think this comes to the question of is there going to be the need for witnesses to travel from France to talk about the property. Exactly. Is that the point you're making, Mr. Cronin? That's exactly it. Except that the issue is also one of annulment. And when you talk about annulment, you're talking about other issues that isn't simply a property division. It is whether or not there was a valid marriage to begin with. Correct. Or whether the marriage was consummated. In this instance, they never did any discovery, which they were permitted to do, to determine the source and the basis of that annulment. They just assumed that it was a gynecological problem, and therefore all of a sudden in the middle of trial, when they disclosed three witnesses under 214, as we suggested in a brief, nine other witnesses popped up because I raised the argument and objected to that. So let's talk about discretion. Let's talk about what's involved here. Let's talk about the strong choice, the doctrine that favors the plaintiff's choice of forms, the strong presumption that has to be given to that. What is the inconvenience? The divorce is not at issue, obviously. Property is at issue, possibly, in Brazil. What other issues are there? Maintenance? Maintenance is not at issue. In fact, the defendant in this case went to France and filed a separate proceeding for maintenance. More maintenance than she would have ever gotten anywhere else. So where does the evidence lie to overcome that strong presumption that favors the choice of form? And respectfully, Judge, that strong presumption is based on liberty rights. It's not a matter of... And, you know, I'm glad he said Bodie because I really love that case, and I want to read... You have 30 seconds or so. Well... While you're looking for that, if I could ask you, in the realm of equitable distribution of property, do you foresee any litigation with regard to, you know, her health, lifestyle, those matters that generally come into bear on that question? Is that something that's going to be before the trial court such that she would want to be bringing witnesses that live in France? The only witnesses that she presented, even in violation of the 214 disclosure, were a gynecologist, for whatever reason, whose materiality was irrelevant, whose... some neighbors. The evidence... Well, but that's my question. I mean, I don't remember right now why she would want to call her neighbors, but if there's... If the only thing that could come up, for example, in the... If the only thing that you think is going to be before the court that hears this is the equitable distribution of mural property, is there something that her neighbors could come testify to? And then she wouldn't be able to get them here? But there's more here, too, Judge. Let's not forget... I mean, I don't know. I'm just asking. This is a woman who registered with the French consulate and received her green card and resided in this country and married my client with the understanding that they would live here. And that's why this application was made. That's why this application was held off until the marriage took place. Yeah, but that's not my question. My question is, is there something... Is there the potential for some issue in the litigation that would... such as the equitable division of property that would cause her to need to have witnesses, neighbors in France, lifestyle witnesses, health witnesses, to come and then she's in a situation where she doesn't have compulsory process? That's my question. And the answer to that question is, I can't think of one person other than her who could possibly be brought in for a relevant or material reason into this country to litigate it. That's your answer? I'm going to skip Bode. I regret it. Thank you very much. I didn't mean to stop you. If you want to talk about Bode, you can. I said I didn't mean to stop you. If you want to talk about Bode... No, no, that's okay. I was just going to give a point to Bode. But I've seen the briefs and I see that... We thank both sides. Interesting case. And we'll take it under advice with courts in recess.